UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
BETTIE PAIGE,

                                    Plaintiff,

       -against-

NEW YORK CITY POLICE DEPARTMENT,
CITY OF NEW YORK, THOMAS DONONUE,
DET., P.O. CONGALOSI and P.O. HERBERT
JARROD,

                                      Defendants
-----------------------------------------------------------------x

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAR 3 0 2012 ★
BROOKLYN OFFICE

**MEMORANDUM AND ORDER**
10-CV-3773 (SLT)(LB)

**TOWNES, United States District Judge:**

Bettie Paige ("Plaintiff"), proceeding *pro se*, commenced the instant action under 42 U.S.C. § 1983 on August 13, 2010 against the New York City Police Department, the City of New York, Detective Thomas Donohue, P.O. Congalosi[1] and P.O. Herbert Jarrod (collectively, "Defendants"), alleging various violations of her rights under the Fourth Amendment. In the Amended Complaint (the "Amended Complaint"), dated and filed on April 4, 2011, Plaintiff pleads (i) that P.O. Congalosi and P.O. Jarrod had falsely arrested Plaintiff and members of her family, (ii) that certain unidentified police officers had violated her expectations of privacy by means of harassment, intimidation and surveillance and had made an attempt to murder her, and (iii) that certain unnamed and unidentified individuals had caused repeated damage to the tires of her vehicle and later engaged in an attempt to kidnap her. On August 1, 2011, Defendants moved to dismiss the instant action pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated below, Defendants' motion is granted in part and denied in part.

---

[1] The record does not contain P.O. Congalosi's first name.

1

## *FACTUAL ALLEGATIONS*

On September 15, 2008, Defendant police officers Congalosi and Jarrod stopped Plaintiff's vehicle while she was driving on Fulton Street in Brooklyn, New York with members of her family in the passenger seats.[2] *See* Am. Compl. at ¶¶ 3, 12-14. Congalosi and Jarrod proceeded to arrest Plaintiff, one of her grandsons and her daughter. *See id.* at ¶¶ 4, 16. Defendant officers behaved in a disrespectful and unprofessional manner while making the arrest; in fact, they "became rough . . . and violent with plaintiff [sic] daughter and grandson." *Id.* at ¶ 17; *see also id.* at ¶ 16. The arrest resulted in the detention of Plaintiff at the New York City Police Department for more than two hours. *See id.* at ¶¶ 5-6. Further, Plaintiff's vehicle was subjected to a search and removed to the 81th Precinct of the Department. *See id.* at ¶ 18. A tracking device was installed on the vehicle around such time, thereby enabling the police officers to place Plaintiff and certain family members under surveillance. *See id.*

Additionally, from January to April 2009, Plaintiff became the subject of continued physical surveillance by certain unidentified individuals who appeared to be police officers. *See id.* at ¶¶ 29-32. On numerous occasions, Plaintiff observed these individuals – first female and then male – standing on streets adjacent to or near Plaintiff's residence or sitting in cars in front of her workplace, sometimes carrying a police badge or a gun. *See id.* at ¶¶ 31-32.

On September 6, 2009, on the way to her granddaughter's home, Plaintiff noticed that she and her vehicle were being followed surreptitiously by a police car from the 73rd Precinct of the New York City Police Department, and subsequently by an unidentified police officer who

---

[2] Although the Amended Complaint indicates that the traffic stop and subsequent arrest occurred on September 15, 2009, *see* Am. Compl. at ¶¶ 3, it was later ascertained at proceedings held before Magistrate Judge Bloom on May 17, 2011 that these events occurred on September 15, 2008. *See* Docket No. 30 (transcript of proceedings) at pp. 3-5.

appeared to have been the operator of the police car. *See id.* at ¶¶ 22-24. Later on the same day, while sitting in the yard of her granddaughter's home, Plaintiff briefly observed a bent arm protruding from the window of a school building across the street. *See id.* at ¶¶ 25-26. Immediately thereafter she noted the presence of several police cars parked in front of or near the school, which led her to conclude that certain police officers had made an attempt to murder her. *See id.* at ¶¶ 27-28, 33.

In early 2010, Plaintiff experienced seven flat tires during a two-month period and an acid-induced tire blowout on April 1, 2010. *See id.* at ¶ 35. No perpetrator is identified in the Amended Complaint in connection with the foregoing tire-related incidents. Subsequently, on April 22, 2010, after exiting a friend's residence following a nighttime visit, Plaintiff noted the presence of five "suspicious" unidentified men on the premises. *See id.* at ¶¶ 36-37. One of the men appeared to be searching for the address number of the friend's residence with the aid of a flashlight while others sat in cars or stood nearby. *See id.* at ¶ 37. The unidentified male in possession of a flashlight pursued Plaintiff on the street until both reached a well-lit main street. *See id.* As a result of the foregoing acts and incidents, Plaintiff no longer feels free and safe while engaging in ordinary daily activities. *See id.* at ¶¶ 41-46.

## *DISCUSSION*

### *Standard of Review*

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept all allegations in the complaint as true and draw all reasonable inferences in the non-moving party's favor. *See Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir. 1998). Furthermore, a complaint filed by a *pro se* plaintiff must be construed liberally and interpreted to

raise the strongest arguments it suggests. *See Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (internal citation omitted). The factual allegations set forth in the complaint, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must plead sufficient facts to state a claim that is plausible, and "a formulaic recitation of the elements of a cause of action will not do." *Id.* A pleading satisfies the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 554 U.S. 662, 129 S.Ct. 1937, 1949 (2009).

### *Dismissal of the New York City Police Department*

Under New York law, "departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and cannot sue or be sued." *Hall v. City of White Plains*, 185, F.Supp.2d 293, 303 (S.D.N.Y. 2002). The Police Department of New York City is one such entity and thus cannot be subjected to law suits. *See East Coast Novelty Co. v. City of New York*, 781 F.Supp. 999, 1010 (S.D.N.Y. 1992) (stating that the City Police Department, as an agency of the City, is not a suable entity). As such, the City Police Department must be dismissed from the instant action as a matter of law.

### *Dismissal of the City of New York*

In order to state a § 1983 claim against a municipality, a plaintiff must allege that the deprivation of his or her constitutional rights was caused by an official policy or custom of the municipality. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 692-94 (1978). Nowhere in the Amended Complaint has Plaintiff included any allegation that may be interpreted to relate to

4

such a policy or custom. Plaintiff's assertion that the City is responsible, as an employer, for the behavior of Defendant-police officers is insufficient as a matter of law, as it is well-established that a municipality may not be held liable under § 1983 for the actions of its employees based on a theory of *respondeat superior*. *See Monell*, 436 U.S. at 694-95. Given the foregoing, any claim against the City of New York must be dismissed.

## *Dismissal of Detective Thomas Donohue*

The personal involvement of a defendant in the deprivation of a constitutional right is a prerequisite to the imposition of liability and damages in a § 1983 action. *See Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986) (internal citation omitted), *cert. denied*, 434 U.S. 1087 (1978); *see also Taylor v. Brentwood Union Free Sch. Dist.*, 143 F.3d 679, 685 (2d Cir. 1998) (stating that liability may only be imposed upon a defendant if the defendant personally subjected the plaintiff to the deprivation of a federal right). Given the foregoing, a plaintiff must describe the personal involvement of a defendant for purposes of stating a § 1983 claim against that defendant. *See Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999). Although Detective Thomas Donohue has been named a defendant in the instant action, the Amended Complaint is devoid of any factual allegation relating to or suggesting Detective Donohue's personal involvement in the deprivation of Plaintiff's constitutional rights. In fact, no mention of Detective Donohue appears in any of the alleged instances of § 1983 violations.[3] As such, Detective Donohue must be dismissed from the instant action.

---

[3] In her motion for reconsideration without prejudice, filed on August 1, 2011, Plaintiff alleges that Detective Donohue committed slander by calling her a "trained murderer." She has included no such claim in the Amended Complaint. Even if this allegation were to be included in the Amended Complaint, however, no claim has been stated sufficiently against Detective Donohue. Under New York law, the elements of slander are: (i) a defamatory statement of fact,

5

## *False Arrest and Electronic Surveillance by P.O. Congalosi and P.O. Jarrod*

Although Plaintiff alleges in the Amended Complaint that she was arrested and detained without probable cause by P.O. Congalosi and P.O. Jarrod, Plaintiff has failed to include any specific facts in support of such allegations, just the conclusion that she was detained without cause. Plaintiff must describe what occurred. As currently stated in the Amended Complaint, Plaintiff's false arrest claim against Congalosi and Jarrod must be dismissed for failure to "plead[] factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged," *Iqbal*, 129 S.Ct. at 1949.[4]

Plaintiff additionally alleges that Congalosi and Jarrod subjected her to electronic surveillance by means of an electronic tracking device installed upon her vehicle, thereby violating her Fourth Amendment rights. The Supreme Court has recently held that "the attachment of a Global-Positioning-System (GPS) tracking device to an individual's vehicle, and subsequent use of that device to monitor the vehicle's movements on public streets" constitutes a search or seizure within the meaning of the Fourth Amendment. *United States v. Jones*, 132 S.Ct. 945, 948 (2012). Here, without first obtaining a search warrant or Plaintiff's consent,

---

(ii) that is false, (iii) published to a third party, (iv) of and concerning the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander per se, and (vii) not protected by privilege. *See Atkins v. Bohrer*, 2011 WL 6779311 at *6 (S.D.N.Y. Dec. 23, 2011). None of the foregoing elements, with the possible exceptions of the first and fourth elements, has been pleaded here.

[4] Plaintiff also appears to allege that she was subjected to a pretextual traffic stop without probable cause, but a single conclusory statement that Defendant officers stopped her vehicle under false pretext is insufficient for purposes of pleading this cause of action. *See* Am. Compl. at ¶ 3. To the extent Plaintiff wishes to plead a cause of action based on the traffic stop, she is advised to include detailed factual allegations similar to those that appear on pages 32 to 33 of the original complaint in order to allow the Court to make reasonable inferences that Defendant officers made the traffic stop without probable cause. Plaintiff is further advised that a pretextual traffic stop made with an ulterior motive does not violate her Fourth Amendment rights. *See Whren v. United States*, 517 U.S. 806, 813. A lack of probable cause, however, may render a

Congalosi and Jarrod allegedly installed a tracking device similar to a GPS device on Plaintiff's vehicle. The tracking device was then used by Defendant officers for the very purpose that has been found by the Supreme Court to implicate Plaintiff's Fourth Amendment rights – to monitor the movements of Plaintiff's vehicle on public streets. In light of the fact that the alleged electronic surveillance in the instant case constitutes a warrantless search in violation of Plaintiff's rights under the Fourth Amendment, the Court declines to dismiss Plaintiff's unlawful surveillance claim against Congalosi and Jarrod.

*Surveillance by Unidentified Police Officers*

Plaintiff alleges that she was subjected to continued physical surveillance by unnamed and unidentified police officers located near her workplace or home. This claim fails for two reasons. First, Plaintiff has not named or otherwise identified any defendant officer in connection with this claim so as to allow the suit to proceed against any specific individual. Second, even if the relevant police officers had been sufficiently identified in the pleading, there cannot be a constitutional violation of one's expectation of privacy unless the alleged misconduct "invades an object or area where one has a subjective expectation of privacy that society is prepared to accept as objectively reasonable." *United States v. Hayes*, 551 F.3d 138, 143 (2d Cir. 1008). What a person knowingly exposes to the public is not protected by the Fourth Amendment. *See Katz v. United States*, 389 U.S. 347, 351 (1967). Even surveillance activities conducted near but outside the curtilage of one's home – i.e., an area to which the intimate activity associated with the sanctity of one's home and the privacies of life is extended – do not violate one's Fourth Amendment rights. *See Hayes*, 551 F.3d at 145-46 (internal citation and quotation marks omitted). Further, the curtilage of one's home has been found *not* to include

---

traffic stop violative of such rights. *See id.* at 810.

one's front yard. *See id.* at 145 ("The sanctuary of the home simply does not extend to the front yard of [plaintiff's] property.") Because the unidentified police officers conducted their surveillance of Plaintiff's activities and movement while such officers were physically located in public places such as Plaintiff's workplace or public streets adjacent to or near Plaintiff's home, without intruding upon the curtilage of Plaintiff's home, none of the alleged activities has violated Plaintiff's Fourth Amendment right to privacy.

### *Attempted Murder by Unidentified Police Officers*

Plaintiff pleads that unnamed and unidentified police officers attempted to murder her based on the appearance a bent arm at the window of a school building located across the street from her then-current physical location and the simultaneous presence of several police cars in the surrounding area. Her attempted murder claim is insufficient for two reasons. First, she does not identify, by name or otherwise, any police officer in the relevant allegations. Second, she has failed to plead adequate factual content supporting each element of the claim to meet the plausibility standard under *Iqbal*. For example, the alleged nearby presence of a bent arm, without more, does not provide enough factual content to permit the Court to make a reasonable inference that the intent element of the alleged crime has been sufficiently alleged. As such, the attempted murder claim must be dismissed.

### *Claims Against Unidentified Individuals*

To plead a § 1983 claim successfully, a plaintiff must allege that the misconduct in question was committed by a state actor such as a police officer. *See Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994). Plaintiff asserts that certain unknown individuals had caused repeated

damage to the tires of her vehicle and had even made an attempt to kidnap her. These claims must be dismissed from the instant § 1983 action because there is no indication that any of the alleged acts were perpetrated by a police officer or a state actor of another type.

## *CONCLUSION*

For the reasons stated above, Defendants' motion to dismiss is granted in part and denied in part. The following claims are hereby dismissed: (i) All claims against the New York City Police Department and the City of New York, (ii) the false arrest claim against P.O. Congalosi and P.O. Jarrod, (iii) the physical surveillance claim against unnamed and unidentified police officers, (iv) the claim for attempted murder against unnamed and unidentified police officers and (v) all claims against unnamed and unidentified individuals. However, the electronic surveillance claim alleged against P.O. Congalosi and P.O. Jarrod may proceed. Leave to replead within thirty (30) days of this Memorandum and Order is granted with respect to the false arrest claim against P.O. Congalosi and P.O. Jarrod and a possible claim based on a traffic stop effected without probable cause.

**SO ORDERED.**

s/Sandra L. Townes

/SANDRA L. TOWNES
United States District Judge

Dated: March 30, 2012
Brooklyn, New York

9