UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
BETTIE PAIGE,

                             Plaintiff,

-against-

NEW YORK CITY POLICE DEPARTMENT,
CITY OF NEW YORK, THOMAS DONONUE,
DET., P.O. CONGALOSI and P.O. HERBERT
JARROD,

                             Defendants
----------------------------------------------------------------x

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAR 3 1 2017 ★
BROOKLYN OFFICE

**MEMORANDUM AND ORDER**
10-CV-3773 (SLT)(LB)

**TOWNES, United States District Judge:**

Bettie Paige ("Plaintiff"), proceeding *pro se*, commenced the instant action under 42 U.S.C. § 1983 on August 13, 2010 against the New York City Police Department (the "NYPD"), the City of New York (the "City"), Detective Thomas Donohue, P.O. Peter Congalosi and P.O. Herbert Jarrod, alleging various violations of her rights under the Fourth Amendment. In two prior orders, and after giving Plaintiff leave to amend her complaint and re-plead certain claims, the Court dismissed all claims accept the unlawful traffic stop claim asserted against P.O. Congalosi and P.O. Jarrod (collectively, the "Defendants"). (ECF Nos. 42 & 74). Now before the Court is Defendants' motion for summary judgment seeking dismissal of that final claim and Plaintiff's filings in opposition. (ECF Nos. 88-96). For the reasons stated below, Defendants' motion is **GRANTED**.

*LEGAL STANDARD*

Summary judgment is only appropriate where, considering "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations

1

(including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). In determining whether there is a genuine issue of material fact, a court resolves all ambiguities and draws all justifiable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Where, as here, a *pro se* litigant is involved, although the same standards for dismissal apply, the Court must give the *pro se* litigant special latitude in responding to a summary judgment motion. *See McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999) (courts "read the pleadings of a pro se plaintiff liberally and interpret them 'to raise the strongest possible arguments that they suggest'") (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994). In particular, the *pro se* party must be given express notice of the consequences of failing to respond appropriately to a motion for summary judgment. *See McPherson*, 174 F.3d at 281.

In this case, Defendant provided Plaintiff with a "Notice to Pro Se Litigant" dated July 10, 2015, as required by Local Rule 56.2, which sets out the responsibilities of the pro se plaintiff in responding to a motion for summary judgment. The Notice advised Plaintiff of the procedures for responding to a motion for summary judgment, including the requirement that Plaintiff submit a response to Defendant's statement of facts pursuant to Local Rule 56.1 and to submit counter-evidence. Plaintiff demonstrated her understanding of the summary judgment procedure by submitting an affidavit and evidence in response to the motion.

## BACKGROUND

On September 15, 2008, Defendant police officers Congalosi and Jarrod stopped Plaintiff's vehicle while she was driving on Fulton Street in Brooklyn, New York, with members of her family in the passenger seats. (Defs. R. 56 Stmnt. ¶¶ 11-15.) Prior to stopping Plaintiff's vehicle, the officers received notification from their onboard computer that their patrol vehicle's electronic license plate readers had detected that Plaintiff's 1991 Lincoln Town Car had an expired or suspended registration. (*Id.* ¶ 11.) Their onboard system had referenced a scan of Plaintiff's license plate against the New York State Police Information Network ("NYSPIN"), a database maintained by New York State containing information on licenses and vehicle registrations, including suspensions and revocations. (*Id.* ¶¶ 9-10.) On that date, NYSPIN reflected that the registration and license plates on Plaintiff's vehicle were suspended. (*Id.* ¶11). The record resulted from an August 13, 2008 suspension order issued by the New York Department of Motor Vehicles ("DMV") indicating that Plaintiff had failed to maintain automotive liability insurance between June 12, 2008 and August 8, 2008 as required by Section 318.1 of the New York State Vehicle & Traffic law. (*Id.* ¶¶1-4). The suspension order expressly required her to immediately turn her registration and license plates in to the DMV. (*Id.* at ¶5). She did not do so. (*Id.*)

In the instant complaint, Plaintiff alleged that the officers behaved in a disrespectful and unprofessional manner during the stop, arrested her alongside certain family members, and eventually "became rough . . . and violent with plaintiff [sic] daughter and grandson," detained her for hours, and secretly attached an electronic surveillance device to her vehicle. *See* Compl. ¶¶ 4-6, 16-18. More generally, Plaintiff alleged that Congalosi and Jarrod's conduct was part of an ongoing vendetta against her family and somehow related to a pattern of harassment and

menacing surveillance by numerous members of the 73rd precinct. *See, e.g., id.* at ¶¶ 22-33. To that end she alleged among other things that her tires were regularly slashed, that she was followed or chased by people she took to be police officers, and that such occurrences caused her to believe members of the 73rd precinct were attempting to murder her. *See id.* at ¶ 35-46.

On these grounds Plaintiff asserted numerous Section 1983 claims against the City, the NYPD, and various police officers. The Court previously dismissed all of Plaintiff's claims except for her claim for an unlawful traffic stop against officers Congalosi and Jarrod. (*See* ECF Nos. 42, 74). Those defendants now move for summary judgment, arguing that they had probable cause to make the stop and that they are, regardless of the existence of probable cause, entitled to summary judgment under the doctrine of qualified immunity. (ECF No. 96). Plaintiff opposes the motion on scattered grounds involving the 73rd precinct's alleged conspiracy to harass and attempt to murder her. Where relevant to her claim for an unlawful stop, and broadly construed, she appears to contend that the September 15 traffic stop was a pretext for her harassment and an attempt to acquire her family's birth dates and social security numbers. (ECF No. 88 ¶¶ 4-19.) She also argues that the officers did not have probable cause in light of proof that her vehicle was insured on the date of the stop. (*Id.* ¶ 5; ECF No. 88-1.)

## DISCUSSION

The Defendants must be granted summary judgment because the undisputed facts show that they had probable cause to stop Plaintiff on September 15, 2016, and, in any event, that their qualified immunity requires dismissal because they reasonably believed they had probable cause.

The Fourth Amendment protects the "right of the people to be secure . . . against unreasonable searches and seizures." U.S. Const. amend. IV. "Temporary detention of

individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of the Fourth Amendment." *Whren v. United States*, 517 U.S. 806, 809-10 (1996). Thus, "the Fourth Amendment requires that an officer making a traffic stop have probable cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity." *United States v. Harrison*, 606 F. 3d 42, 45 (2d Cir. 2010). "When an officer observes a traffic offense—however minor—he has probable cause to stop the driver of the vehicle." *United States v. Scopo*, 19 F.3d 777, 782 (2d Cir. 1994) (quoting *United States v. Cummins*, 920 F.2d 498, 500 (8th Cir.1990). Moreover, "a police officer can rely on information obtained from a police computer database in order to establish probable cause." *Hughes v. McWilliams*, No. 04 CV 7030 (KMW), 2009 WL 4823940, at *3 (S.D.N.Y. Dec. 15, 2009), aff'd, 420 F. App'x 63 (2d Cir. 2011) (citing *Herring v. United States*, 555 U.S. 135 (2009)). An officer's reliance on such information is "reasonable even if the information is incorrect, provided the police officer did not know or have reason to know that the information was false or unreliable." *Id.*; *see also Arizona v. Evans*, 514 U.S. 1, 15-16 (1995) (police officer's reliance on police computer record was reasonable even though the outstanding warrant on which the officer arrested the defendant was the result of a clerical error).

Here, it is undisputed that the defendant officers relied on information provided by the DMV via the NYSPIN database. For that reason alone the Court must conclude that they had probable cause to stop Plaintiff. Plaintiff appears to challenge this conclusion in two ways. First, she proffers a letter from her insurer as proof that her car was insured "from 08/09/08 through 02/09/09" and asserts that "the claim of not having insurance is untrue and [this] document from [her] insurance carrier has been provided as proof [that] active insurance were

5

[sic] in effect. Litigant is not responsible for Department of Motor Vehicle lack in responsibility to up date [sic] their system in a timely manner [sic]." (ECF No. 88 ¶; 88-1). Second, she more generally suggests that the stop was a ruse and a means to learn her families' social security numbers and birth dates for "investigative means." (*Id.* ¶ 14.)

Neither of those contentions negate the presence of probable cause for the stop. Plaintiff's proof of insurance, a letter from her insurer, establishes only that she insured her vehicle several weeks before being stopped on September 15, 2008. Without more this letter fails to establish that she had notified the DMV or otherwise addressed the suspension of her license plates and registration. On this point Plaintiff appears to confuse her responsibility to insure her vehicle under New York State Vehicle & Traffic law with her responsibility to comply with the August 13, 2008 DMV suspension order. The latter specifically advised her of her obligation to immediately turn in her license plates or pay a civil fine. (ECF No. 94-1 at 2). That Plaintiff subsequently insured her vehicle does not establish that she complied with these obligations or otherwise provided proof of insurance to the DMV. In short, Plaintiff has no shown no error by either the officers or the DMV, and her letter fails to contradict Defendants' evidence that her license plates and registration were suspended at the time of her stop. Moreover, even if Plaintiff had provided such proof of notification to the DMV probable clause would still exist because the officers reasonably relied on NYSPIN information when making the stop. *See, e.g., Muhammad v. City of Peekskill,* No. 06–CV–1899, 2008 WL 4525367, at * 6 (S.D.N.Y. Sept. 30, 2008) (finding an officer's belief, based on erroneous information from a DMV database, was reasonable where plaintiff failed to show the DMV records were "inaccurate, [that defendants] knew or suspected that they might be inaccurate, or that [defendants] were responsible for any inaccuracies in these records").

Plaintiff's second contention—that the stop was pretextual—is entirely speculative. For instance, her assertions that Officer Congalosi seemed "suspicious" and stood "anxiously, with pen and paper in anticipation to write information down" and her conclusory claims that the stop was part of a greater "mission on behalf of the agent Detective Hunter to get [her] birth date . . . for investigative means" find no support in evidence. (ECF No. 88 ¶¶ 3, 14). In any event, even if the stop were pretextual probable cause would still exist. The Supreme Court has already rejected "any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved" because "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren*, 517 U.S. at 813 (1996); *see also United States v. Dhinsa*, 171 F.3d 721, 724-25 (2d Cir. 1998("[A]n officer's use of a traffic violation as a pretext to stop a car in order to obtain evidence for some more serious crime is of no constitutional significance.")

Separately, Defendants are entitled to summary judgment under the doctrine of qualified immunity. Qualified immunity protects police officers from civil liability if their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Taravella v. Town of Wolcott*, 599 F.3d 129, 133 (2d Cir. 2010). When a defendant invokes qualified immunity to support a motion for summary judgment, courts engage in a two-part inquiry: whether the facts shown "make out a violation of a constitutional right," and "whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Here, for the reasons stated above, the facts have neither shown a constitutional violation nor any implication of a clearly established constitutional right. In short, the defendant officers reasonably relied on NYSPIN, which gave them probable cause to stop Plaintiff on the date in question.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is **GRANTED**. (ECF No. 91). Because all of Plaintiff's claims have now been dismissed, the Clerk of Court is directed to enter judgment in favor of Defendants and close the case.

**SO ORDERED.**

/s/ Sandra L. Townes
SANDRA L. TOWNES
United States District Judge

Dated: March 30, 2017
Brooklyn, New York